UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Clifton Donell Lyles, ) | Civil Action No. 4:22-cv-1398-SAL |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Order |
| Medical Director John B. McRee, ) | |
| Nurse LaPointe, Warden Sharpe, ) | |
| Associate Warden Chuala, and ) | |
| Associate Warden Brightharp, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court for review of April 28, 2023, Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.) (Report). [ECF No. 44.]

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts below are taken in a light most favorable to Plaintiff, to the extent that they find support in the record. Clifton Donell Lyles (Plaintiff) is currently incarcerated at the South Carolina Department of Corrections (SCDC). [ECF No. 38-2 at 2.] He was sentenced to thirty years for trafficking illegal drugs in June 2003. *Id*. Plaintiff alleges on November 20, 2020, he was working in the prison garden when he stepped on uneven ground causing his knee "to either pop out of place or the lig[a]ments to pop out of place or tear." [ECF No. 1 at 7.] He screamed in pain, and other inmates and his supervisor came to his aid. *Id*. A fellow inmate helped Plaintiff put his knee back into place, and he was able to stand up and walk around. *Id*. Plaintiff's supervisor asked him if he needed to go to medical, but he declined and asked to rest instead. *Id*. His supervisor agreed and let Plaintiff return to his living unit. *Id*. His knee ultimately swelled, but because of a staff shortage he could not immediately be taken to medical. *Id*.

Plaintiff first was sent to medical by his supervisor when he returned to work three days later. *Id*. The report from this visit indicates Plaintiff was seen for "painful right knee," but there was "no … swelling or redness" and that he was "[a]ble to bend knee all the way back under neath (sic) him with discomfort voiced." [ECF No. 38-3 at 3.] The report also notes Plaintiff hobbled slightly when he walked. *Id*. He was given ibuprofen and issued an elastic knee sleeve. *Id*. He was told to return if no improvement in 48 to 72 hours. *Id.*

Plaintiff returned to medical twice in December 2020. [ECF No. 38-3 at 4–18.] He alleges he was told he would be scheduled for x-rays, but it "never happened." [ECF No. 1 at 8.] Records show Nurse LaPointe ordered an x-ray for Plaintiff's right knee at the first December appointment. [ECF No. 38-3 at 5, 14.]

In January 2021, Plaintiff visited medical again about his swollen knee. [ECF No. 1 at 8.] He was given some pain medicine and told he would be scheduled for x-rays and to see a doctor. *Id*. Plaintiff returned to medical a month later and was issued a crutch. [ECF Nos. 1 at 8, 38-3 at 20.] The nurse who gave Plaintiff his crutch said he would follow up with Nurse LaPointe about scheduling x-rays and seeing a doctor. [ECF No. 1 at 8, 38-3 at 20.]

Plaintiff alleges he wrote medical again in March 2021, complaining of knee pain and requesting to see a doctor to have his knee x-rayed. [ECF. No. 1 at 9.] Nurse LaPointe ordered x-rays and instructed medical to issue crutches to treat Plaintiff's knee pain until he could be seen for x-rays. [ECF No. 38-3 at 26.] Plaintiff was issued a second crutch and told his x-rays had been scheduled, but no examination date was given. [ECF Nos 1 at 9, 38-2 at 27.]

After receiving his second crutch, Plaintiff attempted to return to work, but his supervisor told him he could not work in the prison garden while he was on crutches. [ECF No. 1 at 9.] He told Plaintiff "either get rid of the crutches or go back to the unit" and suggested he rest for a few

days and return when he no longer needed the crutches. *Id*. Plaintiff spoke with Associate Warden Chuala and complained the only way he was able to go outside was to go to work. *Id*. at 10. Chuala told Plaintiff he could not allow him to work in the garden with crutches and asked Plaintiff what happened to his knee. *Id*. Plaintiff explained he hurt his knee working in the garden and was waiting for Nurse LaPointe to send him for x-rays and to see a doctor. He alleges Chuala said he would speak to LaPointe. *Id*. After a week of being confined to his cell, Plaintiff decided "to fight through the pain and return to work without my crutches." *Id*. at 9–10.

Plaintiff alleges he ran into Warden Sharpe in April 2021, and Warden Sharpe told him he would speak to Nurse LaPointe about the x-rays and doctors visit. *Id*. at 10. Plaintiff wrote to Associate Warden Brightharp that same day and asked him to investigate the x-rays and doctors' appointment. *Id*. at 10–11.

On April 30, 2021, Plaintiff filed an emergency step-one grievance, stating he was suffering from severe knee pain and explaining he had sent many requests to medical but still had not been scheduled for x-rays. [ECF Nos. 1 at 11, 42-1 at 34.] Warden Sharpe's response noted "[x]-rays have been ordered, but due to the pandemic it has caused delays." [ECF No. 42-1 at 36.] The grievance was denied, and he filed a step-two grievance. [ECF No. 1 at 12.] This grievance was also denied with the note "[s]ince the time of your original grievance, you have been examined by the nursing staff, medical providers, and have had an x-ray of your knee with no significant findings for treatment. You have a current regimen of medication that is provided to you. It appears you have received medical care and assistance." [ECF No. 42-1 at 32.]

Plaintiff was sent for x-rays on August 9, 2021. *Id*. An SCDC medical report documented small knee joint effusion[1] but "no other significant finding, no acute fractures." [ECF No. 38-3 at 92.] Plaintiff was told the x-ray result was "negative[,]" but he was not told "what it was negative for." [ECF No. 1 at 12.] He then wrote a request to medical stating he was not in agreement with this finding and that he was still experiencing pain. [ECF No. 42-1 at 26.]

In October 2021, Plaintiff was transferred within SCDC from Turbeville Correctional to Evans Correctional. [ECF No. 38-2 at 3.] He submitted additional requests to medical in November 2021 and February 2022, complaining of knee pain and asking to see a doctor. He was sent for a second round of x-rays and consulted with a doctor. [ECF No. 38-4 at 8–9.] The doctor told Plaintiff the x-rays showed arthritis and, Plaintiff alleges, bone spurs and torn ligaments. [ECF No. 42 at 5.] The doctor prescribed Meloxicam[2] and cortisone shots.[3] [ECF No. 42 at 5, 42-1 at 40.] Plaintiff submitted two more requests to medical concerning knee pain in October and November 2022. [ECF Nos. 42 at 5, 42-1 at 40, 43 at 2.] He was given a pass to receive ice to treat pain as needed. [ECF No. 42-1 at 42.] Though Plaintiff is still prescribed daily pain medication, he is not taking it every day. [ECF No. 38-4 at 9–10.]

---

[1] This condition is caused by fluid accumulation around the knee. Gerena, Mabrouk, DeCastro, Knee Effusion, National Library of Medicine National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK532279/ (last visited September 19, 2023).

[2] "Meloxicam is a nonsteroidal anti-inflammatory drug (NSAID) used to relieve the symptoms of arthritis…." Meloxicam (Oral Route), Mayo Clinic Drugs and Supplements, https://www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/description/drg-20066928 (last accessed September 19, 2023).

[3] Cortisone shots, or corticosteroids, "are a group of steroid hormones … which have anti-inflammatory properties." Carrie Macmillan, How Do I Know if I Need a Cortisone Shot?, Yale Medicine, https://www.yalemedicine.org/news/cortisone-shots (last accessed September 19, 2023).

Plaintiff filed his Complaint on May 5, 2022, alleging violations of the Eighth Amendment's prohibition on cruel and unusual punishment under 28 U.S.C. § 1983 against Nurse LaPointe, Dr. McRee, Warden Sharpe, Associate Warden Chuala, and Associate Warden Brightharp. [ECF No. 1 at 2–5.] He alleges that Defendants' delay in sending him for x-rays and failure to properly diagnose his knee problems was denial of adequate medical treatment in violation of the Eighth Amendment. *Id*. Defendants moved for summary judgment. [ECF No. 38.] Plaintiff responded opposing the motion, to which Defendants replied. [ECF Nos. 42, 43.] The magistrate judge issued his Report, ECF No. 44, to which Plaintiff objected. [ECF No. 46.] Defendants replied, ECF No. 48, and the matter is now ripe for ruling.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

5

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[i]n the absence of *specific* objections … this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

## SUMMARY JUDGMENT

Summary judgment is appropriate if a party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment bears the burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the non-moving party must then, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 233. A party asserting that a fact is genuinely disputed must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier for

fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## DISCUSSION

Because Plaintiff is proceeding *pro se*, the court is charged with liberally construing the pleadings to allow him to fully develop potentially meritorious claims. *See Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *Pinckney v. Ozmint*, 490 F. Supp. 2d 670, 675 (2007). Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

The State must provide medical care to those it punishes by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to a prisoner's serious medical needs is an "'unnecessary and wanton infliction of pain' … proscribed by the Eighth Amendment" and is actionable under 28 U.S.C. § 1983. *Id.* at 105 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). But not every claim of inadequate medical treatment is a constitutional violation. *Id.* Accidents and unintended failures to provide adequate medical care cannot establish Eighth Amendment violations. *Id.* at 105–06. To satisfy the deliberate indifference standard, Plaintiff must show that he had serious medical needs and that Defendants acted with deliberate indifference to those needs. *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

Plaintiff raises the following specific objections to the Report.[4] The first two objections are based on the magistrate judge's recitation of the facts, and the remaining objections relate to the magistrate judge's findings on Plaintiff's Eighth Amendment claims.

---

[4] Plaintiff numbered his objections (1) through (9) but he inadvertently omitted number (5). To avoid confusion, the court has grouped the objections by topic and addresses each in turn. Plaintiff also submits a ninth objection, in which he objects to the magistrate judge's finding "Plaintiff has

7

- In his factual recitation, the magistrate judge erred in omitting the doctor's diagnosis of Plaintiff's bone spurs, torn ligaments, and cartilage. [ECF No. 46 at 1.]

- The magistrate judge also erred in finding Nurse Lapointe ordered Plaintiff be issued two crutches until the x-rays could be completed. *Id*. at 2.

- The magistrate judge erred in finding Plaintiff has failed to show he had a serious medical need of which Defendants knew about and consciously ignored. *Id*. at 3.

- The magistrate judge erred in finding "Plaintiff fails to show that he was denied medical treatment by Defendants" and "Plaintiff received medical care even though it may not have been the medical care so desired." Plaintiff alleges he was denied *adequate* treatment, not that he was denied treatment all together. *Id*. at 1–2.

- Plaintiff objects to the magistrate judge's finding that "there is no evidence Defendant McRee was personally involved in the treatment of the Plaintiff" and "the record creates no genuine issue of material fact to support his deliberate indifference claim against non-medical person[n]el." *Id*. at 4.

**I.     Plaintiff's Factual Objections**

Plaintiff makes two objections to the magistrate judge's finding of facts. One of those findings is that "a doctor that reviewed the x-ray of the knee while at Evans Correctional inform[ed] Plaintiff that he had arthritis in both knees." [ECF No. 44 at 9 (citing ECF No. 38-4 at 9).] Plaintiff argues the magistrate judge should have found the doctor diagnosed him with "arthritis, bone spurs" as well as "torn ligaments[] and cartilage." [ECF No. 46 at 1.]

At his deposition, Plaintiff never mentioned bone spurs, torn ligaments, or cartilage damage. Instead, when asked the following question: "[T]he doctor that saw your x-ray of your knee [since] you've been at Evans [Correctional Facility] stated that you have arthritis in your right

---

failed to allege facts sufficient to hold defendants liable as supervisors either in their individual capacities or for supervisory liability under § 1983." [ECF No. 46 at 4–5.] Plaintiff seems to concede this point in the very next sentence when he acknowledges "it is barred for a Plaintiff to argue Supervisory Respondeat (sic) in a § 1983 suit, and Plaintiff does not raise that claim here[.]" *Id*. at 5 Rather, Plaintiff emphasizes "each defendants (sic) personal and official failures to take appropriate actions when made aware of Plaintiff's injuries and sufferage (sic)." *Id*.

knee and your left knee, correct?" Plaintiff responded "Yes." [ECF No. 38-4 at 9.] The first time Plaintiff alleges he was diagnosed with arthritis, bone spurs, and torn ligaments is in his response in opposition to summary judgment. [ECF No. 42 at 5.] Plaintiff does not provide any supporting documentation for these diagnoses.

Generally, issues raised for the first time in a responsive pleading are not appropriate for this court to consider. *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) (recognizing "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"). And Eighth Amendment medical indifference claims resulting from a delay in medical treatment must be supported by evidence of a medical diagnoses. *Nelson v. Caswell*, C/A No. CIV8:05–874HMHBHH, 2006 WL 1432084 (D.S.C. May 23, 2006). Because Plaintiff raised these medical conditions in his response to Defendants' summary judgment motion and failed to offer documentation to support his allegations, the magistrate judge did not err in omitting them from his Report. But even if Plaintiff had properly raised these medical conditions, he fails to show he was prejudiced by the magistrate judge's omission of these medical conditions from the Report. The magistrate judge found Plaintiff was diagnosed with arthritis in his knee. [ECF No. 44 at 9.] Arthritis and prescription pain medicine are sufficient to establish Plaintiff suffered a serious medical condition for purposes of establishing an Eighth Amendment claim. Plaintiff has not been prejudiced by the Report's omission of bone spurs, torn ligaments, and cartilage damage because the finding of arthritis alone is sufficient to establish the first element of Plaintiff's Eighth Amendment inadequate medical treatment claim.

Plaintiff also objects to the magistrate judge's finding that "Nurse LaPointe ordered that Plaintiff be issued two crutches[.]" [ECF No. 44 at 11, 13.] He argues, "Nurse LaPointe did not order that any crutches be given to [Plaintiff]. The first crutch was issued by [attending nurse]

9

Nathan Severance and the second by [attending nurse] Michajah Thornton." [ECF No. 46 at 2.] The record supports the magistrate judge's finding: Plaintiff's medical record shows Nurse LaPointe *ordered* "two crutches for ongoing [care of] knee pain" be issued to Plaintiff "until xrays (sic) can be done[.]" [ECF 38-3 at 26.] The attending nurses *issued* the crutches ordered by Nurse LaPointe. [ECF No. 38-3 at 20, 27.] Because Plaintiff does not bring any claims against the nurses who gave him his crutches, it was proper for the magistrate judge to omit them from his factual recitation.

## II.  Deliberate Indifference to Medical Need

Plaintiff objects that the magistrate judge found he has not demonstrated a serious medical need about which Defendants knew and consciously ignored.[5] [ECF No. 46 at 3.]  Specifically, Plaintiff objects to the magistrate judge's findings that Plaintiff received medical care for his knee. [ECF No. 44 at 10, 12.]  Plaintiff argues that the magistrate judge failed to appreciate that he was denied *adequate* treatment. [ECF No. 46 at 1–2.]

"An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." *DePaola v. Clarke,* 884 F.3d 481, 486 (4th Cir. 2018). Plaintiff's allegations of inadequate medical care are based on delay in receiving x-rays and failing to timely treat his knee pain. [ECF No. 1 at 14.] Delay of treatment may provide a reasonable basis for inferring deliberate indifference to a serious

---

[5] To the extent Plaintiff's objection can be interpreted as an objection to a finding that he has not demonstrated a serious medical need, ECF No. 46 at 3, Plaintiff's objection misunderstands the Report. The magistrate judge found "Plaintiff has failed to show that he had a serious medical need *of which Defendants knew about and consciously ignored.*" [ECF No. 44 at 12 (emphasis added).] The Report accepts that Plaintiff's knee problem was a serious medical need under the Eighth Amendment and focuses on the provision of medical care. Plaintiff argues x-ray results showing fluid on his knee, arthritis, and the doctor's prescription of Meloxicam and cortisone shots are evidence his knee condition was "clearly serious." [ECF No. 46 at 3.] The court agrees and finds there is nothing in the Report that suggests otherwise. This objection is without merit.

medical need, *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978), but only if the gravity of the injury is apparent. *See Walker*, No. 92-6526, 1992 WL 337096, at *2 (4th Cir Nov. 19, 1992). Delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. *Nelson*, 2006 WL 1432084, at *4 (quoting *Hill v. DeKalb Reg. Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). "Delay in medical care, with no resulting injury, does not support a claim for deliberate indifference." *Id*. (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Deliberate indifference is a very high standard, and evidence of mere negligence is not enough to support an Eighth Amendment medical indifference claim. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

      While the court agrees that there was a delay in Plaintiff receiving x-rays, we find this delay is insufficient to establish Defendants were deliberately indifferent to Plaintiff's medical needs. A delay in medical treatment must be considered in the context of the seriousness of the medical need. *Nelson*, 2006 WL 1432084, at *4. Plaintiff was ordered x-rays shortly after his knee injury. To ease his pain until he could be taken for x-rays, Defendants provided Plaintiff with ibuprofen, a knee wrap, and crutches. When the results of Plaintiff's x-rays came back negative, he continued to receive care to relieve his knee pain. Even after receiving a second set of x-rays and speaking with a doctor, his treatment regimen changed little: Plaintiff was given stronger pain medications, but the doctor never recommended surgery, physical therapy, or even that Plaintiff refrain from walking. Plaintiff has not shown the delay in receiving x-rays rises to a level of deliberate disregard for Plaintiff's serious medical needs.

The court must also consider whether the delay in medical treatment worsened Plaintiff's condition. *Nelson*, 2006 WL 1432084, at *6. Plaintiff has not offered any evidence his knee is in worse shape because of the delay in receiving x-rays. After Plaintiff's first round of x-rays, he was told the results were "negative." Following his second round of x-rays, he was diagnosed with arthritis (and possibly other conditions) and given Meloxicam and cortisone shots. Plaintiff does not allege that his arthritis resulted from or was made worse by the delay in receiving x-rays, or that anything could have been done to prevent him from developing arthritis if he had been x-rayed sooner. At most, Defendants were negligent in delaying the x-rays and in not diagnosing his arthritis in the first place. But mere negligence is insufficient establish deliberate indifference to a serious medical need, *Grayson*, 195 F.3d at 695, and Plaintiff has not shown this negligence worsened his condition.

Finally, the court must consider the cause for delay. *Nelson*, 2006 WL 1432084, at *6. Plaintiff argues in his objection that Nurse LaPointe purposefully caused the delay in getting x-rays. ECF No. 46 at 3. But Plaintiff offers no evidence to support this allegation.

Nurse LaPointe ordered x-rays shortly after Plaintiff's injury. [ECF No. 38-3 at 5, 14.] It is not clear from the record why it took so long for the x-rays to be scheduled and performed. There is evidence that the COVID pandemic and the resulting restrictions it caused is partly to blame. [ECF No. 42-1 at 36.] But the assertion that Defendants' deliberate indifference caused the delay is unsupported by the record. At worst, Defendants were negligent in not sending Plaintiff for x-rays sooner, but again, negligence is insufficient to establish a claim for medical indifference. *Grayson*, 195 F.3d at 695.

Because he cannot show Defendants were deliberately indifferent to his serious medical need, Plaintiff has failed to allege an Eighth Amendment violation. Even so, the court will briefly

12

address Plaintiff's objections to the magistrate judge's finding that Defendants McRee, Brightharp, Chuala, and Sharpe were not personally involved in denying adequate medical treatment.

### III.     Personal Involvement of McRee and Others

Plaintiff objects to the magistrate judge's findings that Defendant McRee was not personally involved in Plaintiff's treatment during the time alleged and that no evidence exists that Plaintiff was denied any necessary treatment by Brightharp, Chuala, and Sharpe. [ECF No. 44 at 13, 17.] He argues Defendant McRee denied him adequate medical treatment by reviewing Plaintiff's first set of x-rays and finding them to be "negative." [ECF No. 46 at 4.] As to Brightharp, Chuala, and Sharpe, Plaintiff argues he personally spoke with all three of them, and they all promised they would hasten his x-ray appointment. *Id.*

"In order for an individual to be liable under Section 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Plaintiff must also show a causal connection between his injury and the Defendants' actions. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

Plaintiff fails to allege Defendant McRee acted personally in the deprivation of his rights. Plaintiff says he named McRee in this case because he was the medical director over SCDC, and Plaintiff filed medical grievances but his x-rays were still delayed. [ECF No. 38-4 at 7.] He argues McRee "had an obligation to fully investigate Plaintiff's situation before denying his grievance." [ECF No. 42 at 19.] But Plaintiff does not allege Dr. McRee "acted personally in the deprivation of" his rights. *Wright*, 766 F.2d at 850. Plaintiff does not allege McRee performed the x-ray or that he had any kind of personal interaction with McRee. At best, Plaintiff has alleged McRee was

13

negligent in presiding over a medical team that delayed x-rays and failed to diagnose arthritis. [ECF No. 42 at 19.] This is insufficient to establish Defendant McRee acted personally in the deprivation of Plaintiff's rights.

Plaintiff's objection against Defendants Brightharp, Sharp, and Chuala fail for the same reason. None of these defendants are medical personnel, but all three were in leadership positions at Turbeville Correctional while Plaintiff was housed there. Plaintiff alleges all three were aware of Plaintiff's condition and promised to do something, but nothing happened. [ECF No. 1 at 4.] This is insufficient to establish these Defendants acted personally in denying Plaintiff adequate medical attention.

## CONCLUSION

The court adopts the magistrate judge's Report, ECF No. 44, and incorporates it by reference. The court finds Plaintiff has failed to show Defendants were deliberately indifferent to his serious medical need or that they were personally involved in the alleged violations of his Eighth Amendment rights. Defendant's motion for summary judgment, ECF No. 38, is GRANTED, and Plaintiffs' claims are dismissed with prejudice.

IT IS SO ORDERED.

September 28, 2023　　　　　　　　　　　　　　　　Sherri A. Lydon
Columbia, South Carolina　　　　　　　　　　　　　United States District Judge